Thomas Alvord
**LawHQ, PC**
299 S. Main St. #1300
Salt Lake City, UT 84111
Telephone: (385) 285-1090 ext. 30002
Email: thomas@lawhq.com

*Attorney for Plaintiff*

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION
## AT SALT LAKE CITY

| | |
|---|---|
| Evan Cragun,<br><br>         Plaintiff,<br><br>v.<br><br>Boomsourcing LLC, and Fusion BPO Services, Inc.<br><br>         Defendants. | **CLASS ACTION COMPLAINT**<br><br>JURY DEMANDED<br><br>Case No. 2:22-cv-00685-JCB<br><br>Judge Jared C. Bennett |

### INTRODUCTION

1. Last year, Americans received an estimated **72.2 billion** robocalls.

2. Boomsourcing LLC is a significant purveyor of this telephone spam. Boomsourcing admits they "push out millions of phone calls every day" using their "proprietary dialer technology." Boomsourcing.com/?page_id=3240 (last accessed October 21, 2022).

3. Boomsourcing's proprietary dialer "Perfect Pitch" uses artificial and prerecorded voices that "turn our capable call center agents into incredible sounding cyber-agents." *Id.*

4. By using artificial and prerecorded voices, "potential customers have no clue that the call center is offshore." *Id.*

1

5. Boomsourcing uses artificial and prerecorded voices to sell health insurance, hearing products, auto services, solar products, alarm systems, mortgage and financial products, and more. See Boomsourcing.com.

6. Calls promoting these types of services and products are among the most complained about telephone spam to the Federal Communications Commission.

7. Boomsourcing makes these calls to people who have not asked for the calls, have not consented to the calls, and have not agreed to the calls in anyway. The calls are to people with whom Boomsourcing has no relationship. Further, Boomsourcing does not honor the National Do Not Call Registry ("DNCR") nor identify itself in the calls.

8. Boomsourcing knows that making calls in this way violates people's privacy and violates the Telephone Consumer Protection Act ("TCPA"). Boomsourcing has been sued at least four other times for TCPA violations. See e.g. *Ronquillo v. Boomsourcing, et al*, 3:19-cv-01230 (S.D. Cal.); *Gruder v. Boomsourcing, et al*, 3:20-cv-00796 (S.D. Cal.); *Rogers v. Boomsourcing*, et al. 2:21-cv-00823 (W.D. Wash.); *Fralish v. Boomsourcing, et al.*, 3:21-cv-00761 (N.D. Ind.).

9. "Robocalls and robotexts are nuisances. Congress banned them in the Telephone Consumer Protection Act of 1991 ('TCPA'). But as every American knows, there are companies—like the defendant in this case—who refuse to get that message while collectively sending millions of others." *Cranor v. 5 Star Nutrition, L.L.C.*, 998 F.3d 686, 688 (5th Cir. 2021).

10. Plaintiff Evan Russell ("Evan") is a victim of these prerecorded and artificial voice spam calls.

11. Like most Americans, Evan has a mobile cellular telephone. He uses his phone to receive and make important calls, to get emergency information and to receive and send messages to family members and friends. He uses his phone regularly for his personal enjoyment.

12. Evan, and some class members, have tried to eliminate the harassment, invasion of their privacy, and other damages from unauthorized calls by placing their numbers on the DNCR, but even that has not worked. Boomsourcing calls anyway.

13. These calls have caused Evan and the class members frustration and stress. The failure to identify the caller hinders them from enforcing their rights to make a do-not-call request. The calls cause them to avoid looking at their phones or answering calls when it may have been important. The calls reduce their phones' storage and battery life. Personal time is lost. In short, the calls invade their privacy, diminish the value of their phones and their enjoyment of life and cause a nuisance, an annoyance and an intrusion into their seclusion.

14. Because of Boomsourcing's continuing violations of the law, Evan brings this action for himself and for other similarly situated people in the United States to enjoin these abusive practices and for damages.

## JURISDICTION AND VENUE

15. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under the TCPA, 47 U.S.C § 227.

16. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Boomsourcing is located within this district, and a significant portion of the facts giving rise to this lawsuit occurred in this district.

## PARTIES

17. Evan Cragun is an individual and is a resident of Utah.

18. Boomsourcing, LLC is a Utah Limited Liability Company with its principal place of business in Lehi, Utah, and is a wholly owned subsidiary of Fusion BPO Services, Inc.

19. Fusion BPO Services, Inc. ("Fusion") is a Delaware Corporation with its principal place of business in Draper, Utah.

## FACTUAL ALLEGATIONS

20. Evan is the residential subscriber of the cell phone number 801-891-2857. Evan uses this number for his personal use and in his home. This is the only phone number that Evan

has. Evan pays for this phone bill with his personal funds. Evan does not use this phone in any business.

21. Evan's home, phone, and privacy have been invaded by the artificial and prerecorded voice calls from Boomsourcing.

22. Evan registered 801-891-2857 on the National Do Not Call Registry on March 28, 2022.

23. Despite his number being on the DNCR, Boomsourcing has inundated Evan with at least fifteen calls, as follows:

    i. From (801) 252-4005 on April 4, 2022 at 8:14am
    ii. From (801) 252-4005 on April 4, 2022 at 2:23pm
    iii. From (801) 252-4005 on April 5, 2022 at 8:39am
    iv. From (801) 252-4005 on April 5, 2022 at 11:42am
    v. From (801) 252-4005 on April 5, 2022 at 2:47pm
    vi. From (801) 252-4005 on April 6, 2022 at 8:29am
    vii. From (801) 252-4005 on April 6, 2022 at 11:37am
    viii. From (801) 252-4005 on April 7, 2022 at 11:56am
    ix. From (801) 252-4005 on April 7, 2022 at 3:2pm
    x. From (801) 252-4005 on April 14, 2022 at 9:49am
    xi. From (801) 252-4005 on April 15, 2022 at 10:10am
    xii. From (801) 252-4005 on April 15, 2022 at 1:43pm
    xiii. From (801) 783-5186 on June 8, 2022 at 4:53pm
    xiv. From (801) 783-5186 on June 20, 2022 at 8:9am
    xv. From (801) 783-5186 on June 23, 2022 at 8:14am

24. Boomsourcing made the calls to Evan and class members using an artificial or prerecorded voice. This is based on the following facts:

    i. Boomsourcing states that by "utilizing Perfect Pitch Technology™ in our offshore call centers we are able to turn our capable call center agents into

4

        incredible sounding cyber-agents." Boomsourcing.com/?page_id=3240 (last accessed October 21, 2022). Further, "Soundboard technology is the ideal solution for offshore call center agents that perfectly understand customer intent however aren't able to respond with a perfect accent free and easy to understand native dialect." *Id.*

   ii.   Boomsourcing states: "This soundboard of **pre-recorded** responses or Ready Responses, is **recorded** by the highest quality voice talent with a neutral accent. These responses are specifically made to sound natural complete with filler words and laughter. **Unlike a live agent your soundboard will always stay on script** guaranteeing that responses are always relevant and in compliance." Perfectpitchtech.com/about (last accessed October 21, 2022) (emphasis added).

   iii.   No human being was on the call.

   iv.   When the call was answered, no person responded, but instead an artificial voice responded.

   v.   On many of the calls, the voice played identical messages, stating "Hi this is Crystal with Insurance Guide, on a recorded line. Can you hear me ok?"

   vi.   Plaintiff's counsel has **many other clients** who have received and reported these spam calls in which the caller says "Hi this is Crystal with [obscure company name] … Can you hear me okay?" The voice, sound, and accent are all identical on all these calls.

25. The calls to Evan did not indicate the name of the individual calling. The name "Crystal" is just a made-up name Boomsourcing uses for its artificial and prerecorded voices.

26. The calls did not indicate the name of the entity on whose behalf the call was being made.

27. On some of the calls, the artificial and prerecorded voice stated that the caller was with "Insurance Guide."

28. Evan had no clue who Insurance Guide is and had never heard of Insurance Guide. A Google search for "Insurance Guide" provides no help because the name is generic.

29. Only after countless hours of research was it discovered in the Utah Business Registry that Boomsourcing has multiple generic DBAs, including Insurance Guide, Financial Guide, Education Guide, Charity Guide, Fit Funnel, and Job Funnel.

30. A company with actual consent to contact someone does not use obscure, patently generic names, except to avoid getting caught.

31. Some of the calls did not state who the caller was, such as the calls in June 2022 from 801-783-5186. However, when the number 801-783-5186 was called back, the Crystal bot with "Insurance Guide" answered. When asking for a company website to verify that the call was safe, the call was put on hold. The Crystal bot then came back on the line, said she would call back later, and hung up the line.

32. Evan, and class members who received prerecorded and artificial calls from Boomsourcing, have no relationship with Boomsourcing, have no account with Boomsourcing, have never provided their telephone numbers to Boomsourcing, and have never consented to Boomsourcing sending them any type of communication.

33. Boomsourcing admits they have their own calling list(s), and thus companies can work with Boomsourcing "whether or not you have your own data/call list." Boomsourcing.com/?page_id=5511 (last accessed October 21, 2022).

34. Boomsourcing called Evan and class members because their phone numbers were on Boomsourcing's own call list. As such, Boomsourcing *knew* that it was calling people who had not consented to be called and who had not provided their numbers to Boomsourcing.

35. The Boomsourcing calls that used the name "Insurance Guide" were made with the purpose of offering and selling insurance products.

36. Boomsourcing's calls were not for an emergency purpose.

37. Evan received more than two calls from Boomsourcing after being registered on the Do Not Call Registry.

38. Boomsourcing knowingly and willfully made the calls using an artificial and prerecorded voice to people without consent, knowingly and willfully called people on the DNCR, and knowingly and willfully failed to disclose their actual business name.

39. These calls have caused Evan and the Class members frustration and stress. The calls caused them to avoid looking at their phones and answering calls when it may have been important. The calls reduce their phones' storage and battery life. In short, the calls invade their privacy, diminish the value of their phones and their enjoyment of life and cause a nuisance, an annoyance and an intrusion into their seclusion.

40. Court filings in other cases against Boomsourcing indicate that Boomsourcing is the wholly owned subsidiary of Fusion.

41. In May 2022, Fusion announced it had acquired Boomsourcing. *Fusion Acquires Boomsourcing,* [Businesswire.com/news/home/20220531005229 /en/Fusion-Acquires-Boomsourcing---An-Outsourcing-Solution-Provider-Headquartered-In-Utah](Businesswire.com/news/home/20220531005229/en/Fusion-Acquires-Boomsourcing---An-Outsourcing-Solution-Provider-Headquartered-In-Utah) (last accessed October 21, 2022).

42. During the acquisition, Fusion would have learned of Boomsourcing's illegal spamming. First, the announcement states that Fusion has offered "voice and non-voice customer engagement and data marketing services for over 33 years." *Id.* In other words, Fusion has been in the voice customer engagement space for three decades and thus would have intimately understood all the details of Boomsourcing's operations. Second, Fusion stated "we will be able to leverage Boomsourcing's service offerings and **soundboard technology** to enhance the success of our company's outreach." *Id.* (emphasis added). In other words, the reason for the acquisition was driven in large part to deploy Boomsourcing's soundboard technology (i.e., the artificial and prerecorded voice technology) in Fusion's own business. And, third, any acquisition involves substantial due diligence, especially large acquisitions like the one here. For these reasons, Fusion would have known every detail of Boomsourcing's artificial and prerecorded voice spam operation.

43.     Undoubtedly, Fusion was and is aware of Boomsourcing's illegal telemarketing operations. As the sole owner of Boomsourcing, Fusion oversees and controls the operations of Boomsourcing. Notwithstanding this control and oversight, and notwithstanding Fusion's recent deep dive and due diligence into Boomsourcing's operations earlier this year, Fusion continues to authorize the illegal spam operations of Boomsourcing. Consequently, Fusion may be personally liable for Boomsourcing's illegal conduct.

## LEGAL STANDARD

44.     **Artificial and Prerecorded Calls**. Under the Telephone Consumer Protection Act ("TCPA"), **artificial or prerecorded voice** calls to a cellular telephone service is unlawful other than a call made for emergency purposes or made with the prior express consent of the called party. 47 U.S.C. § 227(b)(1)(A); 47 C.F.R. § 64.1200(a)(1). If the call "introduces an advertisement or constitutes telemarketing," then "prior express written consent" is required. 47 C.F.R. § 64.1200(a)(2).

45.     **Do Not Call Registry**. Residential telephone subscribers who do not want to receive telephone solicitations may place their phone number on the national Do Not Call Registry. 47 C.F.R. § 64.1200(c). The TCPA proscribes callers from making "any telephone solicitation to … [a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry." 47 C.F.R. § 64.1200(c)(2).

46.     **Caller Identification Required.** The TCPA prohibits callers from telemarketing to a residential telephone subscriber without disclosing the name of the individual caller and the name of the person or entity on whose behalf the call is being made. 47 C.F.R. § 64.1200(d). "The FCC clarified that providing a d/b/a in a telemarketing message is permissible, but it is insufficient to fully comply with Section 64.1200(d)(4)." *Robison v. 7PN*, LLC, 569 F. Supp. 3d 1175, 1185 (D. Utah 2021) (citing *Rules and Regulations Implementing the TCPA*, 68 Fed. Reg. 44144, 44163 (July 25, 2003)).

47. **Personal Liability**. A person may be liable for TCPA violations when the person "actively oversaw and directed this conduct." *City Select Auto Sales Inc. v. David Randall Assocs.*, 855 F.3d 154, 162 (3d Cir. 2018); see also 47 U.S.C. § 217.

48. **Definition of Person**. The term "person" includes an individual, partnership, association, joint-stock company, trust, or corporation. 47 U.S.C. § 153(39).

## CLASS ACTION ALLEGATIONS

49. Pursuant to Civ. R. 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of himself, and Classes of persons similarly situated, to remedy the ongoing unlawful business practices alleged herein and to seek redress on behalf of all those persons who have been harmed thereby, including injunctive relief.

50. **Class Definitions.** Plaintiff proposes the following Classes:

**The Robocalls Class**
All people in the United States (1) who within four years prior to the filing of this action until the date of certification, (2) Boomsourcing made or initiated one or more calls using an artificial or prerecorded voice to their cellular telephone, (3) where the number called was provided by Boomsourcing's call list and not by the company on whose behalf Boomsourcing was calling.

**The Do Not Call Class**
All people in the United States (1) who within the four years prior to the filing of this action until the date of certification, (2) Boomsourcing made or initiated more than one telephone solicitation within any twelve-month period, (3) to their residential cellular telephone number, (4) while listed on the national Do Not Call Registry.

**The Failure To Identify Class**
All people in the United States (1) who within four years prior to the filing of this action until the date of certification, (2) Boomsourcing made or initiated more than one telemarketing call within any twelve-month period, (3) to their residential cellular telephone number, (4) without disclosing the name of the individual making the calls and the name of the entity on whose behalf the calls were made.

51. These calls have caused each Class member frustration, stress, anxiety, frustration, and worry about scammers. The calls hinder them from enforcing their rights to determine the purpose of the call, to make a do-not-call request and to monitor compliance with the TCPA rules. The calls cause them to avoid looking at their phones when it may be important.

The calls reduce their phones' storage and battery life. In short, the calls invade their privacy, diminish the value of their phones and their enjoyment of life and cause a nuisance, an annoyance and an intrusion into their seclusion.

52. **Class Size.** The Classes are so numerous that joinder of all members would be impracticable. The exact size of the Classes and the identity of the members are readily ascertainable from Boomsourcing's business records and likely number in at least the thousands, as Boomsourcing states that it can make millions of calls a day.

53. **Adequacy.** Plaintiff is an adequate representative of the Classes because his interests do not conflict with the interests of the Classes, he will fairly and adequately protect the interests of the Classes and he is represented by counsel competent and experienced in TCPA and class action litigation.

54. **Common Questions of Law and Fact**. There are questions of law and fact common to the proposed Classes. These questions include, *inter alia*:

   i. Did they receive a call from Boomsourcing?
   ii. Was the number called registered on the Do Not Call Registry?
   iii. Did Boomsourcing use an artificial voice?
   iv. Was the call prerecorded?
   v. Is Fusion liable for Boomsourcing's calls?
   vi. Were the calls for an emergency purpose?
   vii. Did the calls properly identify the sender?
   viii. Were Boomsourcing's actions willful or knowing?

55. **Typicality**. Plaintiff's claims are typical of those of the Classes they seek to represent. They arise from similar facts and are covered by the same law.

56. **The nature of the notice to the proposed class**. Notice to the class will be provided by mail and possibly text messages.

57. **Rule 23(b)(3) issues**. The questions of law and fact common to the class members predominate over questions affecting only individual members. A class action is superior to

multiple individual suits because it conserves judicial resources, promotes consistency and efficiency of adjudication and deters illegal activities. The interest of individual members of the Classes in individually controlling the prosecution of separate claims against Boomsourcing is small because the damages in an individual action for violation of the TCPA are small. Plaintiff is not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above. Managing this case as a class action should have no significant difficulties and will likely present few difficulties because the claims involve the same conduct by Boomsourcing and the resolution of the common issues will resolve the class members' claims.

58. **Rule 23(b)(2) issues**. Boomsourcing has acted on grounds generally applicable to the Classes, thereby making final injunctive relief and corresponding declaratory relief with respect to the Classes appropriate on a class-wide basis. Moreover, the telemarketing violations made by Boomsourcing are likely to continue in the future if an injunction is not entered.

### FIRST CAUSE OF ACTION
### Violations of 47 U.S.C. § 227(b) & 47 C.F.R. § 64.1200(a)(1)-(2)
### (On Behalf of Plaintiff and the Robocalls Class)

59. Boomsourcing violated 47 U.S.C. § 227(b) and 47 C.F.R. § 64.1200(a)(1)-(2) by using artificial and prerecorded voices to contact Plaintiff and members of the Robocalls Class.

60. Because Fusion actively was aware of, oversaw and authorized Boomsourcing's illegal calls, Fusion is personally liable for the violations of 47 U.S.C. § 227(b) and 47 C.F.R. § 64.1200(a)(1)-(2).

61. As a result of the violations of 47 C.F.R. § 64.1200(a)(1)-(2), Plaintiff and members of the Robocalls Class have been damaged and are entitled to an award of $500.00 in statutory damages for each violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

62. Because Boomsourcing knowingly and willfully violated 47 C.F.R. § 64.1200(a)(1)-(2), the Court should award $1,500.00 in statutory damages for each violation, pursuant to 47 U.S.C. § 227(b)(3)(B)-(C).

63. Plaintiff and members of the Robocalls Class are also entitled to injunctive relief, prohibiting Boomsourcing from using an artificial voice and prerecorded voice when making telemarketing calls without the prior express written consent of the called party.

## SECOND CAUSE OF ACTION
### Violations of 47 U.S.C. § 227(c) & 47 C.F.R. § 64.1200(c)
### (On Behalf of Plaintiff and the Do Not Call Class)

64. Boomsourcing violated of 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(c) by making telephone solicitations to the residential cellular telephones of Plaintiff and members of the Do Not Call Class while on the National Do Not Call Registry.

65. Because Fusion actively was aware of, oversaw and authorized Boomsourcing's illegal calls, Fusion is personally liable for the violations of of 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(c).

66. As a result of the violations of 47 C.F.R. § 64.1200(c), Plaintiff and members of the Do Not Call Class have been damaged and are entitled to an award of $500.00 in statutory damages for each violation, pursuant to 47 U.S.C. § 227(c)(5)(B).

67. Because Boomsourcing knowingly and willfully violated 47 C.F.R. § 64.1200(c), the Court should award $1,500.00 in statutory damages for each violation, pursuant to 47 U.S.C. § 227(c)(5)(B)-(C).

68. Plaintiff and members of the Do Not Call Class are also entitled to and seek injunctive relief prohibiting Boomsourcing from making telephone solicitations to phone numbers on the DNCR without authorization.

## THIRD CAUSE OF ACTION
### Violations of 47 U.S.C. § 227(c) & 47 C.F.R. § 64.1200(d)
### (On Behalf of Plaintiff and the Failure to Identify Class)

69. Boomsourcing violated 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(d) by making telemarketing calls to the residential cellular telephones of Plaintiff and members of the Failure to Identify Class without disclosing the identity of the individual and identity of the entity on whose behalf the calls were made.

70. Because Fusion actively was aware of, oversaw and authorized Boomsourcing's illegal calls, Fusion is personally liable for the violations of 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(d).

71. As a result of the violations of 47 C.F.R. § 64.1200(d), Plaintiff and members of the Failure to Identify Class have been damaged and are entitled to an award of $500.00 in statutory damages for each violation, pursuant to 47 U.S.C. § 227(c)(5)(B).

72. Because Boomsourcing knowingly and willfully violated 47 C.F.R. § 64.1200(d), the Court should award $1,500.00 in statutory damages for each violation, pursuant to 47 U.S.C. § 227(c)(5)(B)-(C).

73. Plaintiff and members of the Failure to Identify Class are also entitled to and seek injunctive relief requiring Boomsourcing to disclose the name of the actual individual and the actual name of the incorporated entity on whose behalf any call is made when telemarketing.

## RELIEF REQUESTED

Plaintiff respectfully requests that the Court grant Plaintiff and all Class members the following relief against Boomsourcing:

    A.    Certification of the proposed Classes;

    B.    Appointment of Plaintiff as class representative;

    C.    Appointment of the undersigned as counsel for the Classes;

D.  An award of damages to Plaintiff and the Classes, as allowed by law; and

E.  Orders granting such other relief as the Court deems necessary, just and proper.

## JURY DEMAND

Plaintiff requests a jury trial as to all claims of the Complaint so triable.

Dated October 26, 2022

**LawHQ, PC**

/s/ *Thomas Alvord*
Thomas Alvord